IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LESLIE CUMMINGS-HARRIS
and PAMELA TATE,

       Plaintiffs,

v.

                              CIVIL ACTION NO.
                              1:12-cv-0984-JEC

KAISER FOUNDATION HEALTH
PLAN OF GEORGIA, INC.,

       Defendant.

## ORDER & OPINION

This case is before the Court on defendant's Motion for Summary Judgment [22]. The Court has reviewed the record and the arguments of the parties and, for the reasons stated below, concludes that defendant's Motion [22] should be **GRANTED**.

## BACKGROUND

This is an employment discrimination case. Plaintiffs Leslie Cummings-Harris and Pamela Tate began working for defendant Kaiser Foundation Health Plan of Georgia, Inc. ("Kaiser") in February 2004 and August 2005, respectively. (Harris Dep. [22] at 9 and Tate Dep. [22] at 18.) By 2010, Harris held the position of Payroll Supervisor, which required her to process payroll, answer general questions from staff and managers concerning payroll issues, and

facilitate "payroll runs."   (Harris Dep. [22] at 21.)   Tate's position in 2010 was Employee Services Transaction Coordinator, which involved processing state and federal tax forms for Kaiser employees. (Tate Dep. [22] at 25-26.)   Both Harris and Tate worked in the Georgia Region's "Employee Services" unit, a department similar to what many companies refer to as benefits administration.   (Def.'s Stmt. of Undisputed Material Facts ("DSMF") [22] at ¶¶ 7, 11.)[1]

Starting in approximately 2006, defendant began to consider using a web-based management tool called "MyHR" to perform certain human resource functions.   (*Id.* at ¶ 9.)   Harris and Tate participated in meetings during the 2008-2010 timeframe regarding MyHR's potential impact on defendant's human resources department. (*Id.* at ¶ 13.)   Harris expressed concern to her supervisor Melissa Cofino that the MyHR implementation might endanger jobs within Employee Services.   (Harris Dep. [22] at 86-87.)   Cofino "reassured [the] group that everything was fine" and that she would "always keep [them] in the loop" concerning any changes.   (*Id.* at 87-88.)

At some point in 2010, defendant's management identified Employee Services as a unit that primarily performed "'low-touch' employee transactions that could be down-sized or transferred to the National Service Center through the implementation of MyHR."   (DSMF

---

[1]   As plaintiffs have not responded to defendant's statement of facts, they are deemed admitted.   *See* LR 56.1(B)(2)(a)(2), N.D. Ga.

[22] at ¶ 18.)  In late 2010, defendant's Georgia Region was faced with a budget shortfall as a result of increased outside medical costs and the loss of a large customer.  (*Id.* at ¶ 16.)  On account of the budget shortfall, defendant's management accelerated its decision to reduce costs by transferring low-touch transactional work to the National Service Center.  (*Id.* at ¶ 19.)  Harris, Tate, and one other person (Adelia Hall) in the Employee Services division were identified as employees whose positions involved low-touch transactions.  (Boatright Decl. [22] at ¶ 9.)

Cofino and Georgia Human Resources director Linda Boatright notified Harris and Tate on January 19, 2011 that their positions would be eliminated.  (*Id.* at ¶ 1 and DSMF [22] at ¶ 27.)  Harris and Tate were both told that the decision was not related to their performance, and that they had been excellent employees.  (Harris Dep. [22] at 35-36 and Tate Dep. [22] at 34.)  In conjunction with the notification, Harris and Tate were given a letter, a Severance Agreement and General Release ("Agreement and Release"), a set of Frequently Asked Questions, and information about outsourcing services.  (Harris Dep. [22] at 36 and Tate Dep. [22] at 33.)

The letter that Harris and Tate received provided sixty days notice that their positions were being eliminated due to organizational restructuring, and informed the employees that they were eligible for two weeks of severance pay for each year they had

AO 72A
(Rev.8/82)

worked at Kaiser.  (Harris Dep. [22] at Ex. 1.)  The Agreement and Release offered additional severance pay if the employees consented to its terms, which included a release of any employment related claims against defendant.  (*Id.*)  According to Harris, Cofino did not explain the contents of the Agreement and Release except to note that signing the Agreement would entitle Harris to an "extra two months of pay."  (Harris Dep. [22] at 39-40.)

Harris and Tate were given 40 days to sign the Agreement and Release, and seven days to revoke their agreement.  (*Id.* at Ex. 1.)  In the weeks after they met with Cofino, the two employees reviewed the Agreement and Release, signed it, and returned it to defendant.  (*Id.* at 40 and Tate Dep. [22] at 35.)  Both employees received the benefits promised in the Agreement and Release.  (Harris Dep. [22] at 42 and Tate Dep. [22] at 35-36.)

According to defendant, the restructuring "affected" approximately 30 employees in the Georgia Region, seven of whom were under 40.  (Boatright Decl. [22] at ¶ 10.)  Three positions in Georgia's Employee Services unit were eliminated, including those of Hall, Harris and Tate.  (*Id.* at ¶ 9.)  At the time of their terminations, Hall was 61, Harris was 41 and Tate was 44.  (Pl.'s Resp. [23] at Ex. 1.)  Hall was eventually rehired when defendant determined that the restructuring did not adequately account for her job functions.  (DSMF [22] at ¶¶ 49-50.)

4

After leaving Kaiser, Harris began studying for a human resources certification in an effort to obtain another job within the field.   (Harris Dep. [22] at 38.)   While studying for the certification, she discovered that an employee terminated due to organizational restructuring is entitled to 60 days notice.[2]  (*Id.*) According to Harris, this raised "concerns" about how she had been terminated because Cofino led her to believe that defendant was giving her an "extra" 60 days notice out of beneficence, as opposed to legal obligation.  (*Id.* at 45.)

Harris subsequently expressed her concerns to Tate, and eventually both former employees met with an attorney to discuss the circumstances of their terminations.  (*Id.* at 53 and Tate Dep. [22] at 39-40.)  Tate has since testified that she believes she was fired so that defendant could save money because her benefits were more expensive than those of a younger employee.  (Tate Dep. [22] at 36-38.)  Harris has testified similarly that she thought she was let go because she had a higher salary than that of a younger employee. (Harris Dep. [22] at 80.)

Harris and Tate have now filed this lawsuit, alleging that defendant intentionally discriminated against them in violation of

---

[2]  Harris did not specify in her deposition why she thought such a requirement exists.  She may have been referring to the WARN Act, which requires that employers give 60 days notice prior to a mass layoff or plant closing.  29 U.S.C. § 2102(a).

5

the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"). (Compl. [1] at 9.) Plaintiffs also assert a disparate impact claim under the ADEA, as well as several state law claims under Georgia statutory and common law. (*Id.* at 9-21.) Defendant contends that summary judgment is warranted under the terms of the Agreement and Release. (Def.'s Br. in Supp. of Summ. J. ("Def.'s Br.") [22] at 14-15.) It argues further that summary judgment is appropriate because plaintiffs cannot establish a prima facie case of age discrimination and have failed to present any evidence that defendant's proffered, nondiscriminatory reasons for terminating Harris and Tate were pretextual. (*Id.* at 16-20.)

## **DISCUSSION**

### I.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict on the issue for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on

6

the merits.  However, Federal Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which he will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id*. at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion.  *Id*. at 323.  The movant is not required to negate his opponent's claim in order to meet this responsibility. Rather, the movant may discharge his burden by merely "'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case."  *Id*. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.

In deciding a motion for summary judgment, the court must view all evidence and draw any factual inferences in the light most favorable to the non-moving party.  *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  But "the mere existence of *some*

AO 72A
(Rev.8/82)

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (1986).  The requirement to avoid summary judgment is that there be no "*genuine* issue of *material* fact."  Id.

## II.   THE AGREEMENT AND RELEASE

### A.   Legal Effect of the Release

The OWBPA sets forth minimum requirements for the "knowing and voluntary" waiver of an ADEA claim.  29 U.S.C. § 626(f)(1)(A)-(H). *See also Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998)("An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements.").  Section 626(f)(1)(H) is applicable to waivers "requested in connection with an exit incentive or other employment termination program offered to a group or class of employees."[3]  Pursuant to § 626(f)(1)(H), an employer is required to provide the following information to the affected employees:

> (I)  any class, unit, or group of individuals covered by such program, any eligibility factors for such

---

[3]  Because the restructuring at issue here resulted in at least 27 employees losing their jobs, § 626(f)(1)(H) is implicated.  *See* C.F.R. § 1625.22(f)(1)(iii)(B) ("A 'program' exists when an employer offers additional consideration for the signing of a waiver pursuant to an exit incentive or other employment termination (*e.g.*, a reduction in force) to two or more employees.") and *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1246 (11th Cir. 2006) (deferring to the EEOC's regulations with respect to the applicability of the OWBPA's waiver requirements).

8

> program, and any time limits applicable to such
> program; and
>
> (ii) the job titles and ages of all individuals eligible or
>       selected for the program, and the ages of all
>       individuals in the same job classification or
>       organizational unit who are not eligible or selected
>       for the program.

29 U.S.C. § 626(f)(1)(H). The required disclosure is intended to permit any affected employees to evaluate the viability of an ADEA claim before they agree to waive it. *See Griffin v. Kraft Gen. Foods, Inc.*, 62 F.3d 368, 373 (11th Cir. 1995).

Defendant admits that Boatright and Cofino did not disclose the information required by § 626(f)(1)(H). (DSMF [22] at ¶ 34.) Specifically, they did not inform plaintiffs "about the group of employees who were being terminated as a result of the reorganization or about employees who were not selected for termination." (*Id.*) Thus, the Agreement and Release does not qualify as a knowing and voluntary waiver of the ADEA claims asserted by plaintiffs, which claims are discussed below.

That said, the OWBPA does not apply to the state law claims asserted by plaintiffs. *See* 29 U.S.C. § 626(f)(1) and *Oubre*, 522 U.S. at 428 (referring to instances in which a release is "effective as to some claims but not as to ADEA claims"). *See also Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1545 (3d Cir. 1997) (finding a waiver invalid as to plaintiff's ADEA claims but remanding for

9

further proceedings on the non-ADEA claims) and *Clark v. Buffalo Wire Works Co., Inc.*, 3 F. Supp. 2d 366, 372 (W.D.N.Y. 1998) ("the validity of a release under [state] law is determined based on common law contract principles").  The waiver unquestionably extends to those claims.  It expressly applies to "all employment-related claims which Employee has now or which arise in the future against the Releasees" including "all claims based in tort or contract, or under any federal, state, or local statutes, ordinances, regulations, Executive Orders, or common law."  (Harris Dep. [22] at Ex. 1.)

In Georgia, "[w]here the terms of a written [release] contract are clear and unambiguous, the court will look to the [release] contract alone to find the intention of the parties." *Rice v. Huff*, 221 Ga. App. 592, 593 (1996).  Based on the plain language of the Agreement, the parties here clearly intended that plaintiffs would forego any and all state claims against defendant in exchange for the benefits offered in the Release.  (Harris Dep. [22] at Ex. 1.) Accordingly, and as these claims are validly waived, defendant's motion for summary judgment [22] on the state law claims is **GRANTED** pursuant to the  terms of the Agreement and Release.

**B.   Availability of a Separate Cause of Action Under the OWBPA**

As an alternative claim, plaintiffs assert that defendant's failure to comply with OWBPA's minimum requirements in itself provides the basis for an unlawful discrimination claim. (Compl. [1]

10

at ¶¶ 55, 91.)  For relief, plaintiffs seek a declaratory judgment that defendant engaged in unlawful employment practices as well as damages sustained as a result of defendant's wrongful acts.  (*Id.* at ¶ 112(b)-(d).)

Although the Eleventh Circuit has not addressed the issue, every other court to consider it has held there is no independent cause of action under the OWBPA for money damages.  *See E.E.O.C. v. UBS Brinson, Inc.*, Nos. 02Civ.3748RMBTK, 02Civ.3745RMBTK, 2003 WL 133235, at *3 (S.D.N.Y. Jan. 15, 2003)(Berman, J.)("Virtually every court that has decided the issue of whether a violation of the OWBPA, by itself, establishes age discrimination has concluded that it does not.") and *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184 (10th Cir. 1999)(holding same).  The *Whitehead* decision is illustrative.  The plaintiffs in *Whitehead* accepted an early retirement offer from their employer in exchange for signing a release of any ADEA claims.  *Whitehead*, 187 F.3d at 1186-87.  In subsequent litigation, the plaintiffs asserted that the release violated the OWBPA because their employer did not give them the required 45 days to decide whether to sign it.  *Id.* at 1191.  To remedy this violation, plaintiffs requested that the court negate the waiver and award them damages, although plaintiffs had no separate ADEA claim.  *Id.* at 1191-92.

The court ruled against plaintiffs, holding that "waiver provisions [are not] swords that provide plaintiffs with an

11

independent cause of action for affirmative relief, other than declaratory or injunctive relief to negate the validity of the waiver, as it applies to an ADEA claim." *Id.* at 1191. As support for its decision, the Tenth Circuit cited *Oubre*, in which the Supreme Court made clear that "'OWBPA governs the effect under federal law of waivers or releases on ADEA claims.'" *Id.* As the Circuit Court explained, *Oubre*:

> strongly indicates that the OWBPA simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim. The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred.

*Whitehead*, 187 F.3d at 1192.[4]

The Court is persuaded by the Tenth Circuit's reasoning in *Whitehead*. The Supreme Court's language in *Oubre* strongly suggests that an OWBPA violation does not in and of itself support an action for money damages against an employer. Moreover, the declaratory relief requested by plaintiffs is moot as a result of the Court's ruling that the waiver is invalid. *Compare Krane v. Cap. One Serv., Inc.*, 314 F. Supp. 2d 589, 608-09 (E.D. Va. 2004)(permitting an employee to bring an action for declaratory relief to avoid the

---

[4]  *See also Syverson v. Int'l Bus. Mach. Corp.*, No. C-03-04529RMW, 2007 WL 2904252, at *5 (N.D. Cal. Oct. 3, 2007)(Whyte, J.)("[T]he OWBPA, by its plain terms, does not create an independent cause of action.") and *Halstead v. Am. Int'l Grp., Inc.*, No. Civ. 04-815-SLR, 2005 WL 885200, at *2 (D. Del. Mar. 11, 2005)(Robinson, J.)(holding same).

12

disincentive that might otherwise result by application of a "tender

back" provision  a noncompliant waiver).  Thus, defendant's motion

for summary judgment [22] is **GRANTED** to the extent that plaintiffs

rely  solely  on  the  OWBPA  violation  to  establish  an  ADEA

discrimination claim.

**III.  <u>PLAINTIFF'S ADEA CLAIM:  DISPARATE TREATMENT</u>**

The ADEA prohibits an employer from taking an adverse employment

action against an employee who is at least 40 years old because of

that employee's age.  29 U.S.C. § 623(a)(1) ("It shall be unlawful

for an employer . . . to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age.").  The Supreme Court

has held that the "because of" language in the statute means that a

plaintiff must prove that discrimination was the "but-for" cause of

an adverse employment action in order to prevail on an ADEA claim.

*Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009).

Plaintiffs concede that they do not have any direct evidence of

age discrimination.  (Pls.' Resp. [23] at 6.)  The Court thus applies

the *McDonnell Douglas* burden shifting framework.  *See Sims v. MVM,

Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013)(noting the continued

validity of the *McDonnell Douglas* approach).  Under this framework,

plaintiffs must first establish a *prima facie* case of discrimination.

13

*Id.* If that burden is met, defendant must articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* Plaintiffs then have an opportunity to show that defendant's stated reason for the decision is a pretext for discrimination. *Id.* While the framework is a helpful way to organize the production of evidence, "[t]he burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment." *Id.* (citing *Gross*, 557 U.S. at 176).

### A.   Prima Facie Case

To establish a prima facie case of age discrimination, plaintiffs must show that: (1) they are a member of the protected age group, (2) they were subjected to an adverse employment action, (3) they were qualified to do their jobs, and (4) defendant treated similarly-situated employees outside of the protected class more favorably. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). The burden of establishing a prima facie case of disparate treatment under the *McDonnell Douglas* framework is "not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Nevertheless, plaintiffs have failed to meet it.

It is undisputed that plaintiffs were over 40 and that they were qualified for their jobs when they were terminated. (Def.'s Br. [22]

14

at 17-18.)   However, plaintiffs do not present any evidence of a similarly situated younger employee who was treated more favorably. Stated more aptly, as the plaintiffs' job duties were purportedly automated and assigned to the National Service Center as part of a cost-saving reorganization,[5] plaintiffs have failed to demonstrate either that the above did not occur and/or that younger employees were retained in their positions, while plaintiffs were let go.[6]

Tate testified vaguely that her former Kaiser colleague Angie Dandy told her that she had been replaced by Sandra Richaurd, who was under 40.  (Tate Dep. [22] at 44.)  Dandy's out-of-court comment is inadmissible hearsay.  *See Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999)(defining hearsay and discussing the circumstances when a court may properly consider it).  Plaintiff has not provided a statement from Dandy or any other indication that Dandy will be available to testify at trial.  Thus, it would be inappropriate for the Court to rely on Dandy's alleged comment on summary judgment. *Id.*   Moreover, plaintiffs have not produced any evidence of

---

[5]  (DSMF [22] at ¶¶ 18-20.)

[6]  Plaintiffs argue that there is a good reason that they were unable to make this showing: that is, the defendant failed to provide the requested information concerning the names and ages of individuals who were retained notwithstanding the reorganization. The Court will address this alleged discovery violation following its analysis of the evidence, as it now exists, without the missing information that plaintiffs requested from defendant.

15

Richaurd's actual age, background or salary such that the Court could determine whether she is similarly situated to either plaintiff.[7]

Plaintiffs correctly note that the "failure to produce a comparator does not necessarily doom [their] case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). But in the absence of a comparator, there must be some other evidence that creates a triable issue concerning defendant's discriminatory intent. *Id.* The only "evidence" that plaintiffs cite is defendant's failure to meet its obligations under the OWBPA. (*Id.* at 9-10.) As discussed above, an employer's failure to comply with the OWBPA is not in itself evidence of discrimination. *See Whitehead*, 187 F.3d at 1192 ("The OWBPA does not, by itself, determine in the first instance whether age discrimination has occurred.").

As there is no comparator and no other evidence of discriminatory action or intent on the part of defendant, the latter's motion for summary judgment [22] as to the ADEA claim would normally be granted based on the plaintiffs' failure to prove this essential prong of the test.

---

[7] Again, plaintiff argues that it is impossible to make the specific response that was called for because of the defendant's refusal to provide the information.

AO 72A
(Rev.8/82)

**B.    Plaintiff's Contention That Defendant's Discovery Violation Rendered Plaintiff Unable to Make the Necessary Showing**

In explaining why they were unable to produce the ages of potential comparators whom the defendant might have retained, plaintiffs argue that while defendant was the party that possessed this information, it had refused to produce this information during discovery.  Specifically, through an interrogatory, plaintiffs had asked defendant to provide the names, ages, and positions of individuals who were retained during the restructuring that led to plaintiffs' discharge:

> 14.   Please provide the names, along with the ages, positions, and dates of hire of all the individuals that were retained during the same alleged organizational restructuring that resulted in Plaintiff's discharge.
>
> Response: Defendant specifically objects to this request to the extent that such Interrogatory (1) seeks information not relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence and (2) is overly broad, burdensome and oppressive.

Dfdt's 1st Interrog. Answers to Plt CH, 9:14; Dfdt's 1st Interrog. Answers to Plt Tate., 9:14.

(Pls.' Resp. to Def.'s Mot. Summ. Judg. [23] at 13.)

Clearly, and notwithstanding the defendant's assertion in its response to the contrary, the above information was quite relevant to the pivotal issue in the litigation nor does it seem broad, burdensome, or oppressive to have asked the defendant to provide the

requested answer.  Thus, the Court will assume that defendant had an obligation under Rule 26 to disclose the requested information, and will also assume that it wrongly failed to fulfill this responsibility.

Yet, it also is textbook, "Discovery 101" that a plaintiff cannot wait until after a summary judgment motion is filed by a defendant to complain that the defendant has failed to produce necessary discovery.  Nor can the plaintiff typically prevail by arguing that her inability to identify and produce the evidence that might have defeated the defendant's motion for summary judgment was due to the latter's discovery violation.  Instead, a party who believes that the opposing party has wrongly refused to provide requested discovery is expected to file a motion to compel, prior to the filing of the opponent's motion for summary judgment.

Indeed, this Court's local rules require that a motion to compel discovery must be filed before the end of discovery or within fourteen days after service of the disclosure or discovery response upon which the objection is based.  LR 37.1B, N.D. Ga.  In this case, defendant's allegedly deficient discovery response occurred on October 24, 2012 [23-3], and discovery ended on December 21, 2012 [20].  Defendant filed its motion for for summary judgment on January 31, 2013.  Clearly, if plaintiffs were unhappy with defendant's discovery responses, they had ample time to file a motion to compel

18

prior to the date that the defendant filed its motion for summary judgment.

In short, delay in bringing a motion to compel under Rule 37 "can result in a waiver of a party's right to avail himself of the rule." *Price v. Maryland Cas. Co.*, 561 F.2d 609, 611 (5th Cir. 1977).[8]  *See also Reuber v. United States*, 787 F.2d 599, 601 (D.C. Cir. 1986)("it was incumbent upon [plaintiff] to move to compel further discovery responses with reasonable dispatch") and *De La Rosa v. St. Charles Gaming Co., Inc.*, No. 1:04cv540, 2005 WL 2284205, at *8 (E.D. Tex. Aug. 9, 2005)(Giblin, Mag. J.)(a party's "attacks on . . . discovery tactics are waived insofar as [the party] did not file a motion to compel or present any discovery dispute to the court for resolution").

Thus, this Court would normally ignore the plaintiffs' excuses for their absence of evidence to counter the defendant's argument that plaintiffs have not proven their case.  The Court will not do so here, however.  First, it is obvious that in a case alleging age discrimination, a defendant should provide the plaintiff with information regarding the ages of employees who were retained or hired to replace the plaintiff.  Second, as the impetus for this

---

[8]  Decisions of the Fifth Circuit rendered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

19

lawsuit was the exact same omission--defendant's initial failure to comply with a federal law <u>requiring</u> it to give the plaintiffs this precise information at the time that defendant terminated plaintiffs and obtained the latter's waiver of any ADEA claim--defendant was clearly pushing the envelope in continuing to refuse to provide this information in response to an obviously relevant discovery request. Clearly, plaintiffs' counsel's failure to file an appropriate motion to compel was sloppy and amateurish.  Yet, defendant's failure to produce this information hardly puts it in a better light.

Third, and perhaps most significantly, the Court has no idea what happened in this case.  It would be one thing if the defendant had provided affidavits or information giving the Court some firm idea of who was left standing, and their ages, after the reorganization had ended. But defendant never does so.  It simply states, in a conclusory fashion, that it did not discriminate based on age and harangues the plaintiffs for failing to offer evidence to the contrary, albeit the plaintiffs were in no position to do so, as the defendants refused to provide them this information.

For all of the above reasons, the Court is willing to deny defendant's motion for summary judgment[9] to permit the plaintiffs another opportunity to obtain the information that is necessary to

---

[9]  The same concerns would prompt a denial of defendant's motion for summary judgment on plaintiffs' disparate impact claim.

enable the Court to render a decision as to whether there remains a disputed issue of material fact. Yet, the Court is mindful that defendant incurred costs in filing its motion for summary judgment, and had plaintiffs filed a motion to compel, as they should have done, defendant would not have incurred these unnecessary expenses. As it is plaintiffs' fault that these cost were incurred, the Court makes it a condition for any resumption of discovery that plaintiffs, or their counsel, compensate the defendant for the reasonable cost the latter incurred in filing the summary judgment motion. If plaintiffs do not wish to do so, then defendant will be permitted to refile its original motion for summary judgment and that motion will be granted, based on the plaintiffs' failure of proof.

Accordingly, the defendant shall provide the plaintiffs, by **October 15, 2013**, with a detailed statement setting out its <u>reasonable</u> costs and expenses incurred in filing the motion for summary judgment. Plaintiffs shall respond by **October 31**, as to whether it will consent to pay those fees or whether they will pay a fee, but contest the reasonableness of the fees presented.

**<u>CONCLUSION</u>**

For the above reasons, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion for Summary Judgment [22]. The parties shall adhere to the deadlines set out above for purposes of determining how the case will proceed in the future.

21

SO ORDERED, this 22nd day of September, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)